IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARY CARTEN,

    Plaintiff,

v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, GROUP LONG TERM DISABILITY PLAN FOR EMPLOYEES OF FMR CORPORATION, and DOES 1 through 20, inclusive,

    Defendants.

No. C 10-04019 WHA

**ORDER DENYING SUMMARY JUDGMENT, ALLOWING LIMITED DISCOVERY, AND VACATING HEARING**

## INTRODUCTION

This action, brought under the Employment Retirement Income Security Act, 29 U.S.C. 1001 *et seq.*, challenges a denial of disability benefits. Defendants Hartford Life and Accident Insurance Company and Group Long Term Disability Plan for Employees of FMR Corporation move for summary judgment on the "administrative record" — meaning their internal claims administration records. Plaintiff Mary Carten opposes defendants' motion and requests an opportunity to conduct discovery into Hartford's claims handling practices. For the reasons stated, defendants' motion is **DENIED** and limited discovery will be allowed.

## STATEMENT

Plaintiff Mary Carten, a 49-year-old woman, was employed as a Vice President/Account Executive at FMR Corporation until March 2005. Carten has described this job as involving

"outside sales" and "75% travel" (AR AR0555).  After "numerous falls and accidents" or "multiple injuries and sickness" allegedly caused Carten debilitating pain in her knee, ankle, foot, wrist, and shoulder, Carten stopped working (Dkt. No. 1-2, Am. Compl. ¶ 10; Opp. 4).

Carten had participated in FMR's Group Long Term Disability Plan for Employees, which (itself a defendant in this action) was insured and administered by defendant Hartford. Like many group long-term disability policies, FMR's Plan provides a definition of disability that narrows with time. A claimant under this plan may receive disability benefits for two years if she becomes unable to perform "one or more of the Essential Duties of [Her] Occupation." During the next two years, the claimant is eligible for disability benefits only if she is unable to perform "the Essential Duties of a reasonable alternative position offered to [her] by the Employer." Thereafter, the claimant is entitled to disability benefits only if she is unable to perform "one or more of the Essential Duties of Any Occupation" (AR PLAN17).

When Carten stopped working in March 2005, she applied for and received short-term disability benefits, which lasted for six months. When her short-tem disability benefits expired in September 2005, Carten applied for and received long-term disability benefits under the plan that is the subject of this litigation. In September 2009, Hartford terminated Carten's long-term disability benefits. Hartford explained in the termination letter that the termination was based on a review of Carten's claim file that showed she did not meet the newly-triggered definition of disabled; starting in September 2009, Carten was entitled to benefits only if she was unable to perform "one or more of the Essential Duties of Any Occupation" (AR AR0153–56). Carten appealed the termination in March 2010, and Hartford affirmed it in June 2010 (AR AR161–65, AR112–18). Hartford's decision to affirm the termination was based on a second review of Carten's claim file. Each of these two reviews was conducted by a different reviewing physician employed by a different consulting company.

Carten filed the instant action two months later, seeking further review of Hartford's termination decisions. The operative complaint alleges two ERISA claims against defendants. *First*, pursuant to 29 U.S.C. 1132(a)(1)(B), Carten alleges that defendants wrongfully denied plaintiff's long-term disability benefits under the ERISA-governed plan in question

2

(Am. Compl. ¶¶ 19–25). *Second*, pursuant to 29 U.S.C. 1132(a)(3), Carten alleges that defendant Hartford breached its fiduciary duties to plan participants and beneficiaries with respect to its management of the plan (*id.* at ¶¶ 26–32). A motion to dismiss the second claim was denied (Dkt. No. 19). Defendants' summary judgment motion now targets both claims for relief.

The summary judgment briefs are saturated with facts pertaining to the four-and-a-half-year period during which Carten received disability benefits. These facts cluster around two main questions: (1) the sufficiency of Carten's proof of her disability; and (2) the unfairness of Hartford's claims administration. Regarding the first issue, the parties cite the detailed and sometimes inconsistent findings of the many physicians who treated Carten during this period — at various times, various physicians recorded independent diagnoses, observations, and opinions on the extent to which Carten's activity should be restricted. Defendants also rely on the findings of physicians who reviewed Carten's claim file but who themselves never saw or treated Carten. Regarding the second issue, defendants describe numerous measures taken to avoid bias in claims administration, and Carten argues that these measures are inadequate. Carten also cites to evidence outside of the administrative record purporting to show that the consulting companies and individual file reviewers involved with her case are biased. This order follows full briefing on the motion.

**ANALYSIS**

As a threshold matter, the applicable standard of review must be determined. District court review of ERISA disability-benefit denials is de novo unless the plan gives the administrator discretionary authority to determine eligibility for benefits. If the plan grants discretionary authority, then the administrator's decision is reviewed with more deference. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008). The relevant provision of the plan underlying this action stated: "We have full discretion and authority determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (AR PLAN16). This language unambiguously conferred discretion on Hartford to determine eligibility for benefits and to interpret the plan. Carten "does not dispute that the Plan appears to contain language sufficient to confer discretionary authority to Hartford, thus triggering a

3

deferential standard of review" (Opp. 11). Accordingly, this order holds that the abuse-of-discretion standard applies to the instant review.

The fact that Hartford acted both as the claims administrator and as the payor under this plan creates a structural conflict of interest, which must be factored into the abuse-of-discretion analysis.[1] The Supreme Court's *Glenn* decision held that when the same entity determines eligibility for benefits and pays those benefits out of its own pocket, a conflict of interest is created, and "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits." *Glenn*, 554 U.S. at 108. The Supreme Court provided the following guidance for how a reviewing court should factor the structural conflict of interest into its analysis:

> We turn to the question of how the conflict we have just identified should be taken into account on judicial review of a discretionary benefit determination. In doing so, we elucidate what this Court set forth in *Firestone*, namely, that a conflict should be weighed as a factor in determining whether there is an abuse of discretion. We do not believe that *Firestone's* statement implies a change in the *standard* of review, say, from deferential to *de novo* review. . . . Neither do we believe it necessary or desirable for courts to create special burden-of-proof rules, or other special procedural evidentiary rules, focused narrowly upon the evaluator/payor conflict. . . . We believe that *Firestone* means what the word 'factor' implies, namely, that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one.

*Id.* at 115–17 (internal quotations and citations omitted).

Because Hartford has a structural conflict of interest, Carten contends that Hartford's decisions should be reviewed with heightened skepticism. Addressing how little or how much to temper the abuse-of-discretion standard with skepticism, the Ninth Circuit has stated:

---

[1] Hartford protests that Carten's reference to Hartford as "*de facto* plan administrator" is unsupported (Reply Br. 2 n.2), but Hartford later concedes that it is "the claim administrator" (*id.* at 3).

4

> The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial; fails adequately to investigate a claim or ask the plaintiff for necessary evidence; fails to credit a claimant's reliable evidence; or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

*Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 968–69 (9th Cir. 2006) (internal citations omitted). Although the Ninth Circuit's *Abatie* decision pre-dated *Glenn*, this aspect of earlier Ninth Circuit law still seems to be viable. *See Nolan v. Heald Coll.*, 551 F.3d 1148, 1153–54 (9th Cir. 2009). In some instances, it is necessary to evaluate evidence outside the administrative record to determine the conflict's "nature, extent, and effect, on the decision-making process." *Ibid.*

Carten points to a variety of evidence outside the administrative record to support her arguments that Hartford's structural conflict of interest was exacerbated by bias and that Hartford's termination decisions should be reviewed with heightened skepticism. The main thrust of Carten's argument is that Drs. Leela Rangaswamy and Robert Green — the file-reviewing physicians whose reports were the basis for Hartford's decisions to terminate Carten's benefits and affirm the termination — were biased by improper financial incentives and pressures. For example, Carten cites the declaration of Scott Kale, a physician who formerly worked as a medical disability reviewer for Behavioral Medicine Interventions, the consulting firm that provided Dr. Green's report to Hartford. Dr. Kale swears that the reason he stopped performing file reviews for BMI is that "I felt that BMI pressured me to alter my opinions in cases where I found the evidence supported a claimant's disability benefit claim." He explains that on occasions when he "found the evidence supported a claimant's disability benefit claim," the BMI representative to whom he submitted his report "would call and question my findings and ask if I would be willing to alter my report" (Debofsky Exh. A ¶¶ 6–8). Carten also cites court decisions from previous actions questioning the reliability of Dr. Rangaswamy and exercising heightened

5

care regarding the close financial relationship between Hartford and the medical review consulting companies from which it obtains file-reviewer reports (Opp. 19–20).

Defendants object to this evidence on a variety of grounds. *First*, defendants argue that Carten improperly offers materials outside of the administrative record "solely towards the merits of Hartford's benefit determination" (Dkt. No. 38 at 3). Not so. These materials are offered to show the likelihood that discovery regarding Hartford's claims administration practices would lead to relevant evidence. *Second*, defendants object to specific portions of the DeBofsky declaration and exhibits attached thereto. Regarding the Kale declaration, which is attached as Exhibit A to the DeBofsky declaration, defendants list almost every objection in the book, including lack of foundation, authenticity, relevance, hearsay, speculation, and improper impeachment. These objections are overruled. Defendants' other objections to evidence not relied on by this order are moot.

Without ruling on the ultimate admissibility of any materials at trial, this order finds that Carten has produced evidence showing that discovery could well reveal that the file-reviewer reports on which Hartford based its actions were "bought and paid for." Such a showing of improper financial influence would indicate that Hartford's structural conflict of interest deserves closer scrutiny in reviewing the termination of Carten's long-tem disability benefits. At the very least, Carten has put forth a showing that evidence outside the administrative record may illuminate a conflict of interest besides the structural conflict. To ensure a full bias inquiry, Carten will be allowed to conduct at least some conflict-of-interest discovery, and an evidentiary hearing may be held on this issue. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949–50 (9th Cir. 2007) (noting that some discovery aimed at demonstrating a conflict of interest may be appropriate in an ERISA action).

Defendants' citation to rebuttal evidence — such as previous court decisions upholding file review reports submitted by Dr. Rangaswamy — do not erase the risk of structural bias that Carten's evidentiary offerings have raised (Reply Br. 6). Nor do defendants' rehashed arguments as to why Hartford's actions were "reasonable" negate the need to explore this possible bias and settle the standard of review *before* reviewing Hardford's actions. Defendants' argument that the

proposed discovery is too broad also does not provide good cause for denying Carten's request wholesale. Some discovery is warranted to allow Carten to try to demonstrate with admissible evidence how conflicts of interest may have infected Hartford's denial of her claim and subsequent affirmation of the denial. The discovery will be limited to this narrow scope.

## CONCLUSION

Defendants' motion for summary judgment is **DENIED** without prejudice to renewal after the discovery allowed by this order is complete. The hearing set for March 10, 2011, is **VACATED**. The following limited discovery regarding the issues of conflict of interest and bias will be allowed. Carten may serve ten narrow interrogatories without sub-parts and twenty document requests that are narrowly drawn. Carten also may take four one-day depositions. This discovery must be focused on the bias and conflict issues (not, however, limited strictly to Carten's specific case), and may not be used to supplement the record with additional medical documentation supporting Carten's disability claim. This limited discovery must be completed by **JULY 31, 2011**. A case management conference will be held at **11:00 A.M. ON AUGUST 4, 2011**, in order to set an evidentiary hearing on these issues or determine how else to proceed.

**IT IS SO ORDERED.**

Dated: February 28, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE